[Cite as *State v. Lail*, 2011-Ohio-2312.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                        :        C.A. CASE NO.    24118

v.                                               :        T.C. NO.    09CR4273

GEORGE M. LAIL                                   :          (Criminal appeal from
                                                   Common Pleas Court)

    Defendant-Appellant                       :

 

                                                                  :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____13th____ day of ____May____, 2011.

. . . . . . . . . .

LAURA M. WOODRUFF, Atty. Reg. No. 0084161, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

WILLIAM T. DALY, Atty. Reg. No. 0069300, 1250 West Dorothy Lane, Suite 105, Kettering, Ohio 45409
       Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of George Lail, filed June 25, 2010. On December 18, 2009, following an amenability hearing, Lail was transferred for criminal prosecution as an adult from juvenile court. Lail's date of birth is November 15, 1993. On January 12, 2010, Lail was indicted on one count of aggravated

burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree, with a firearm specification; one count of felonious assault (deadly weapon), a felony of the second degree, in violation of R.C. 2903.11(A)(2), with a firearm specification; one count of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1), with a firearm specification; and one count of felonious assault (serious physical harm), a felony of the second degree, in violation of R.C. 2903.11(A)(1), with a firearm specification. Lail pled not guilty, and on March 23, 2010, he filed a motion suppress. After a hearing, the trial court overruled Lail's motion to suppress. On June 2, 2010, Lail pled no contest to aggravated burglary with the attached firearm specification, and to felonious assault (deadly weapon), with the attached firearm specification, and the remaining charges and specifications were dismissed. The trial court sentenced Lail to an aggregate term of eight years.

{¶ 2} At the suppression hearing, Krista Gorsuch, a detective with the Dayton Police Department Burglary Squad, and Laura Fujimura, the court psychologist at the Montgomery County Juvenile Court, testified. According to Gorsuch, she interviewed Lail for an hour and a half in the course of her investigation of a robbery that occurred on Hollencamp Avenue on August 24, 2009. Lail was 15 years old at the time of the interview. Gorsuch questioned Lail in an interview room in the detective section. She introduced herself, and she used a pre-interview form to go over Lail's rights with him. According to Gorsuch, she first asked Lail if he had previously ever been advised of his *Miranda* rights, and Lail stated that he had not. In response, Gorsuch wrote "no" in the upper corner of the form. She also noted the date, time and place of the interview, and obtained identifying

information from Lail, such as his date of birth and address. Lail did not know his social security number. Gorsuch then placed the form in front of Lail and instructed him to follow along with her as she read the form aloud, and she stated, "once I feel comfortable that he understands his right then I have him write his initials next to each number as I go down." Gorsuch testified that Lail indicated his understanding of each right by initialing them individually.

{¶ 3} When she asked Lail about his schooling, Lail stated that he had completed nine years and was able to read and write. Gorsuch stated that Lail read the Waiver of Rights form out loud and after she "felt confident that he understood all his rights, I asked him to sign the form to indicate that, which he did." Lail then made statements to Gorsuch. Lail did not ask for an attorney, nor did he request the interview be terminated. According to Gorsuch, Lail did not appear to be under the influence of alcohol or drugs. Gorsuch testified that throughout the process, Lail appeared to understand her questions, and his responses were coherent. Gorsuch stated that she did not threaten Lail, promise him anything, or coerce his statements, nor did she mistreat him or deprive him of anything in the course of the interview. She did not yell at him. Lail made a written statement, after which he continued to make verbal statements.

{¶ 4} On cross-examination, Gorsuch stated that Lail had been arrested at his home prior to the interview and transported to the Safety Building. Lail's mother, who was present at the home when Lail was placed under arrest, was not transported with Lail. Gorsuch did not attempt to contact Lail's mother prior to the interview. Gorsuch acknowledged that, while Lail told her that he was in the tenth grade, having completed nine

years of schooling, she did not know if Lail was enrolled in special education classes, learning disability programs or mainstream classes. Gorsuch stated that she did not initially advise Lail of the purpose of the interview, but that the form she presented to him indicated that he was being questioned regarding aggravated burglary and felonious assault. Gorsuch stated that she did not discuss the facts of the case until after Lail was advised of his rights. She stated that Lail did not ask for his mother, and Gorsuch did not indicate to Lail that his mother could be present. Gorsuch stated that she was alone in the room with Lail, and that the interview was not recorded. Gorsuch stated that Lail "asked me if I was going to tell the judge what he told me," and Gorsuch "told him yes, that everything that we discussed I had to write a report about that would be available to the court and all the attorneys and the judge." Gorsuch testified that when Lail read the Waiver of Rights portion of the form, he "didn't pronounce 'coercion,' which is pretty typical," and she indicated that she explained the word to Lail. Gorsuch was unaware of Lail's level of reading comprehension.

{¶ 5} According to Gorsuch, Lail "made three different versions of what happened" in the course of the interview. After his first oral statement, Gorsuch confronted him with conflicting information that she had received regarding the incident at issue, and then Lail provided a written statement that "changed slightly." Gorsuch again confronted Lail with conflicting information, and Lail made another statement. In the course of the interview, Gorsuch told Lail that she had spoken with his co-defendant and the victim, and she "implored [Lail] to tell the truth." According to Gorsuch, she "did not make any promises for his court process, * * * But I explained to him that telling the truth would make him feel better; and that lying, when you clearly are lying, is not a good thing to do." Finally,

Gorsuch stated that she did not know that Lail suffered from a learning disability, and that if she were to have known that he did, she would not have done anything differently.

{¶ 6} Fujimura testified that she has been employed as a Montgomery County Juvenile Court psychologist for approximately 20 years, and that she has provided expert testimony in numerous court matters. She stated that she performed a court-ordered evaluation of Lail for the purpose of determining his amenability to the services provided by the Juvenile Court. Fujmura obtained Lail's school records, and from those she learned "that [Lail] received a school age multi-factored evaluation when he was in the fourth grade and attending the Dayton Public Schools. He qualified for Special Education services due to a disability determination of cognitive disability." She stated that Lail's IQ score "placed him in the range of what would be considered mild mental retardation." She stated that "academic testing indicated that [Lail] was functioning many grade levels below what would be expected of other students his same age." According to Fujimura, in "2008, his academic testing revealed that he was performing at a fifth grade level, and his reading comprehension skills were at approximately a fourth grade level." Fujimura stated that she administered standardized achievement testing that indicated that Lail "was functioning at a fourth grade level in spelling and math computation. His ability to recognize words and pronounce them fell at a third grade level, and his reading comprehension skills were assessed to fall at a first grade level." She also conducted two personality tests as well as a clinical interview. She stated, "the personality tests described [Lail] as having deficient social skills and coping skills. He tends to perceive the world in a rather concrete manner. So, in other words, he perceives situations as typically being all or nothing, black or white.

{¶ 7}  "In his effort to maintain the status quo or to be accepted by his peers, he will often tend to go with the path of least resistance and allow himself to go with the flow or be talked into doing certain things, even though he may know that something is not the best thing to do.

{¶ 8}  "After the fact, [Lail] tends to minimize his responsibilities.  He often blames other people or external situations for choices he has made, and he has a tendency to exaggerate or project himself as having much more serious problems than is actually the case, * * * ."  Fujimura qualified her testimony as follows: "I would not want to say that in all areas that he is not capable as other youths his age or other individuals his age.  There are certain situations where if he is under stress or he is in a group where there are, say, more dominant stronger individuals, he would tend to be more easily led.  But I would not be able to say with certainty that in all cases he would not be able to compete or function as other individuals his age."

{¶ 9}  On cross-examination, Fujimura testified that she did not specifically evaluate Lail's competency, and that in the course of her evaluation, she presumed him to be competent.  Fujimura testified that, after she conferred with defense counsel, Lail was referred to the Montgomery County Board of Developmental Disabilities Services ("DDS") for an evaluation to determine if he qualified for services from that agency.  According to Fujimura, "the DSS's definition of metal retardation covers not only the intellectual areas that are identified through the school, they also look at adaptive behavior functioning, so it's a more global assessment.  They look at not only his ability to read, write, perform math, but they also look at his ability to take care of himself on a daily basis."  Fujimura testified

that Lail did not qualify for services from DDS. Fujimura stated that Lail was not taking any medication when she evaluated him, and that she was not aware of a history of any mental health treatment.

{¶ 10} Fujimura described the Georgia Court Competency Test ("GCCT"), which is "an instrument that is used to assess an individual's understanding of the court system, the roles of the courtroom participants, and also there is an opportunity to talk with the individual about the case events connected to her or his pending charge or charges." Lail scored 84 points out of 100 on the GCCT, and although Fujimura did not administer the test to Lail, she stated that "globally a score of 84 would suggest that an individual would have a fairly good understanding of the material that was assessed through that instrument."

{¶ 11} On redirect examination, Fujimura stated that Lail's previous involvement with the Juvenile Court system had primarily been due to his truancy and did not involve any serious offenses.

{¶ 12} The trial court indicated in its Decision and Entry that it overruled Lail's motion to suppress for the reasons stated on the record on May 25, 2010. On that date, the trial court summarized the above testimony. The court noted that Gorsuch's testimony "comports with *Miranda*," and the court concluded that Lail was adequately advised of his rights. The court further concluded that Lail signed the Waiver of Rights Form. The court stated that even though Lail was a juvenile at the time of the interview with Gorsuch, there is no requirement in law that his parent be present or contacted, or that Lail be advised that he could have a parent present. The court stated that there was "no evidence at all of any coercion" in the interview. The court deemed it significant that Lail scored 84 points on the

GCCT, and the court concluded that Lail knowingly and voluntarily waived his rights and that he understood the rights he waived.

{¶ 13} Lail asserts one assignment of error as follows:

{¶ 14} "THE TRIAL COURT ERRED BY NOT SUPPRESSING THE STATEMENTS OF APPELLANT."

{¶ 15} According to Lail, the "young age of the appellant, significant medications, lower IQ, lack of presence by the minor's parent or grandparent, and the lack of presence by an attorney all combine to render this juvenile's statement involuntary."

{¶ 16} "Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted). At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence. (Internal citations omitted)." *State v. Purser*, Greene App. No. 2006 CA 14, 2007-Ohio-192, ¶ 11.

{¶ 17} "In *Miranda v. Arizona*(1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court held that a defendant who is subjected to custodial interrogation must be advised of his or her constitutional rights and make

a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible. The warnings required by *Miranda* are satisfied where, prior to the initiation of questioning, the police fully apprise the suspect of the State's intention to use his statements to secure a conviction and inform him of his rights to remain silent and to have counsel present if he so desires. *State v. Dailey* (1990), 52 Ohio St.3d 88, 90, citing *Moran v. Burbine* (1986), 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410.

{¶ 18} "In a pretrial suppression hearing, when the admissibility of a confession is challenged by the accused, the burden in upon the prosecution to prove compliance with *Miranda*; that a knowing, intelligent, and voluntary waiver of Defendant's rights was obtained or occurred and that the inculpatory statement was voluntary. *State v. Kassow* (1971), 28 Ohio St.2d 141. However, once a case for the above elements is established, the criminal defendant then has the burden of proving his claim of involuntariness. Id." *State v. Alford*, Montgomery App. No. 23332, 2010-Ohio-2493, ¶ 9-10.

{¶ 19} "In *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, * * * , vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 paragraph two of the syllabus, [the Supreme Court of Ohio] stated:

{¶ 20} "'In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and the frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *In re Watson* (1989), 47

Ohio St.3d 86, 88.

{¶ 21} While Lail was only 15 years old at the time of the interview, had a low IQ and lacked prior experience in the context of *Miranda*, Gorsuch's testimony was clear that she read each of Lail's rights to him, and that he did not sign the Waiver of Rights until she was confident that he understood each of them. The single interview was of short duration and, as the trial court found, there was no evidence of physical deprivation, mistreatment or coercion on the part of Gorsuch. Further, while Fujimura testified that Lail's IQ score placed him the range of mild mental retardation, she could not be certain that "in all cases he would not be able to * * * function as other individuals his age." Lail asked Gorsuch if she "was going to tell the judge what he told me," and his question, especially when coupled with his score of 84 on the GCCT, suggests a fairly good understanding of the procedures at issue. Also, Lail was evaluated by the DDS, which performed a "global" assessment that covered not only his intellectual, but also his adaptive abilities. Lail did not qualify for services from the agency, further suggesting a level of appropriate functioning. While Lail argues that his "significant medications" are another factor to be considered, there is no evidence that Lail was taking any medications at the time of the interrogation, and Gorsuch stated that Lail appeared coherent, not under the influence of drugs and able to understand what was happening during the entire process.

{¶ 22} Lail acknowledges that Gorsuch's failure to consult with his parent prior to the interview, and the absence of an attorney do not render his statements inadmissible. See *In re Watson* (1989), 47 Ohio St. 3d 86, 89, quoting *State v.*

*Bell* (1976), 48 Ohio St.2d 270, 276-277, 2 O.O. 3d 427, 430-431, * * *, reversed on other grounds, (1978), 438 U.S. 637 ("'We perceive no requirement in *Miranda* that the parents of a minor shall be read his constitutional rights along with their child, and that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a statement.'"); *State v. Stewart* (1964), 176 Ohio St. 156, 159-160, 27 O.O.2d 42, certiorari denied (1964), 379 U.S. 947, 85 S.Ct. 443, 13 L.Ed.2d 544 ("There is nothing in the 'totality of the circumstances' involved here, which made the confession anything but voluntary. To find that it was inadmissible, we would have to hold that any confession made by a person who is not yet 18 years old is involuntary unless one of his parents or his attorney is present. This is not the law.")

{¶ 23} Under the totality of the circumstances, the record is clear that Gorsuch carefully and completely advised Lail of his rights, that Lail understood those rights and knowingly and voluntarily chose to waive them and speak to Gorsuch without an attorney. The trial court thoroughly considered the evidence that was presented at the suppression hearing, and the record supports the trial court's conclusions. Since we conclude the trial court's findings were supported by competent and credible evidence, Lail's sole assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Laura M. Woodruff

William T. Daly
Hon. Barbara P. Gorman, Administrative Judge
(trial judge - Hon. Michael T. Hall)