[Cite as *State v. Schiessler*, 2012-Ohio-4085.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24771 |
| Plaintiff-Appellee | : | |
| | : | Trial Court No. 2010-CR-4045/1 |
| v. | : | |
| | : | |
| JUSTIN S. SCHIESSLER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of September, 2012.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

A. MARK SEGRETI, JR., Atty. Reg. #0009106, 1405 Streamside Drive, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant Justin S. Schiessler appeals from his conviction and sentence for Felonious Assault and Aggravated Robbery. Schiessler contends that the trial

court erred by overruling his motion to suppress statements he gave to a police officer while in custody, because the State failed to prove that he had knowingly and voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He also contends that his trial counsel was ineffective for having failed to offer proof of his mental deficiencies at the suppression hearing.

{¶ 2} We conclude that the testimony of the police officer to whom Schiessler made his statements, which testimony the trial court found "highly credible," was sufficient to establish that Schiessler knowingly and voluntarily waived his *Miranda* rights. We further conclude that the record of this appeal does not support Schiessler's contention that there was evidence of mental deficiencies on his part that his trial counsel was ineffective for having failed to offer at the suppression hearing. Accordingly, the judgment of the trial court is Affirmed.

## I.   Schiessler Is Arrested and Makes Statements

{¶ 3} One morning in mid-December, 2010, Schiessler was arrested, along with others, as a result of the incident giving rise to his subsequent indictment on two counts of Felonious Assault and two counts of Aggravated Robbery. Dayton Police Detective David Hirst, a 25-year veteran of the Dayton Police Department, interrogated Schiessler at Dayton Police Headquarters (the Dayton Safety Building).

{¶ 4} In its decision overruling Schiessler's suppression motion, the trial court, finding Hirst's testimony "highly credible," adopted it "as the operative facts":

As testified to by Detective Hirst, * * * , Detective Hirst met with [Schiessler]

in a second floor interview room at the Safety Building. [Schiessler] was not handcuffed. Detective Hirst did not have a firearm. Detective Hirst went through a Pre-Interview Rights form with [Schiessler]. [Schiessler] signed the form. State Ex. 1. [Schiessler] was advised of each right separately. [Schiessler] initialed next to each right that was read to him to signify his understanding of each right. [Schiessler] read aloud the waiver of rights paragraph. Detective Hirst provided a definition of the word "coercion" used in the waiver of rights paragraph. [Schiessler] signed the waiver of rights and provided statements.

Detective Hirst spoke with [Schiessler] for a little over two hours, with breaks for Detective Hirst to confer with other detectives. The total length of [Schiessler's] interview was approximately one and a half hours. [Schiessler] did not request food, water, legal counsel, or breaks. [Schiessler] did not ask that the interview stop. No promises or threats were conveyed to [Schiessler]. [Schiessler] was not under the influence of drugs or alcohol at the time. [Schiessler] voluntarily wrote two statements, choosing his own thoughts, words and expression. State's Exs. 2 and 3.

{¶ 5} The evidence in the record supports the trial court's findings of fact.

{¶ 6} Hirst acknowledged, on cross-examination, that he told Schiessler on more than one occasion that Schiessler was lying, based not only upon contradictions with what the other persons arrested were saying, but also upon contradictions contained within Schiessler's own statements.

{¶ 7} Schiessler was eighteen years old at the time he gave his statements. He had completed nine years of schooling. Although Schiessler states, in his brief, that he was still in

school at the time of his interrogation, there is nothing in the record to establish that fact.

## II.   The Course of Proceedings

{¶ 8}   Schessler was charged by indictment with one count of Aggravated Robbery (deadly weapon), in violation of R.C. 2911.01(A)(1), a felony of the first degree; one count of Aggravated Robbery (serious physical harm), in violation of R.C. 2911.01(A)(3), a felony of the first degree; one count of Felonious Assault (serious physical harm), in violation of R.C. 2903.11(A)(1), a felony of the second degree; and one count of Felonious Assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree.

{¶ 9}   Schiessler moved to suppress the statements he made, contending that they were made without a "knowing, intelligent or voluntary waiver of his rights."   At the hearing on his motion, the State offered the testimony of Detective Hirst.   Schiessler did not present any evidence.   After taking the matter under submission, the trial court overruled his motion to suppress, in a written decision.

{¶ 10}   Schiessler then pled no contest to all four counts.   The trial court accepted his plea, and found him guilty of all four counts.   At the sentencing hearing, the trial court merged the Felonious Assault counts into the two Aggravated Robbery counts.   The trial court then sentenced Schiessler to ten years on each of the two Aggravated Robbery convictions, to be served concurrently.

{¶ 11}   From his conviction and sentence, Schiessler appeals.

### III.   The Evidence in the Record Supports the Trial Court's Finding
### that Schiessler Knowingly and Voluntarily Waived his *Miranda* Rights

{¶ 12} Schiessler's First Assignment of Error is as follows:

THE TRIAL COURT ERRED AND DENIED APPELLANT HIS CONSTITUTIONAL RIGHTS BY OVERRULING HIS MOTION TO SUPPRESS STATEMENTS TO THE POLICE ON THE BASIS THAT HE HAD VALIDLY WAIVED HIS RIGHTS AGAINST SELF-INCRIMINATION AND TO COUNSEL.

{¶ 13} Schiessler contends that the State failed to carry its burden of proving that he knowingly and voluntarily waived his *Miranda* rights.

{¶ 14} Hirst testified that after he explained to Schiessler that he was being interviewed on a charge of Felonious Assault, Hirst had Schiessler write down, on the form, his name, social security number, date of birth, and address. Hirst then testified what he did next, as follows:

A. The next step, I tell him I'm going to go over his rights. I'm going to read each one of them to him. I turn it around so he can read it and I tell him that he can read along if he likes. I tell him if he has any questions to go ahead and then ask. People ask all the time it they're not sure of something.

I then would read out loud right number one to him. I ask him, do you understand that right? He replied yes. I then ask him to write down his initials next to the number. I tell him all that means is I read it to him and he understood it. And the same was done with rights one through five.

Q. After you go through rights one through five, do you do anything else?

A. Yes. I then tell him to – I want him to read out loud the Waiver of Rights to me so that I know he's reading it. He read it out loud. I then asked him if he knew what the word "coercion" meant. He told me he did not so I explained "coercion" to

him, and I circled it. That tells me if I'm ever looking over a Rights form with a person that I did explain that to them, because it was circled.

I then asked him how many years he had completed of school and asked him to write it in and also write down what school he'd gone to.

After he'd done that, I asked him if he wanted to talk to me that he needed to sign. He signed it, as did I.

**{¶ 15}** Schiessler predicates much of his argument that the State failed in its burden upon his assertion that although he was eighteen, he had only just completed the ninth grade, arguing "[y]outhfulness and slowness of learning may make the waiver ineffective." There is no evidence in the record to establish that Schiessler had only just completed the ninth grade. The evidence in the record merely establishes that he had only a ninth-grade education, not that he was still in school, having been held back several grades.

**{¶ 16}** Schiessler cites several cases in support of his argument that the State failed in its burden. In one of these cases, *Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980), the officer taking the statement could not remember what the rights he read off a card were, could not recall whether he asked the defendant whether he understood the rights as read to him, and "couldn't say yes or no" whether he had rendered any tests to determine whether the defendant was literate or otherwise capable of understanding his rights. 444 U.S. 469. In the case before us, by contrast, Hirst testified that he ascertained from Schiessler that he understood each right as it was read to him, and had Schiessler read the waiver of rights part of the form out loud, thereby establishing that Schiessler was literate.

**{¶ 17}** In support of his proposition that "[t]he state's evidence must enable the trial

court to evaluate the defendant's age, education and intelligence," Schiessler cites *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). That case was primarily concerned with the issue of whether a defendant's statement after proper *Miranda* warnings would be admissible when the defendant had not long before given a statement, while in custody, that was not accompanied by *Miranda* warnings. The court did say, in footnote 4, at 470 U.S. 315, of the *Miranda* warnings preceding the second statement:

> The *Miranda* advice on the card was clear and comprehensive, incorporating the warning that any statements could be used in a court of law; the rights to remain silent, consult an attorney at state expense, and interrupt the conversation at any time; and the reminder that any statements must be voluntary. The reverse side of the card carried three questions in boldface and recorded Elstad's responses:

> "DO YOU UNDERSTAND THESE RIGHTS? 'Yeh'

> "DO YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS? 'No'

> "HAVING THESE RIGHTS IN MIND, DO YOU WISH TO TALK TO US NOW? 'Yeh I do!' "

> The card is dated and signed by respondent and by Officer McAllister. A recent high school graduate, Elstad was fully capable of understanding this careful administering of *Miranda* warnings.

{¶ 18} In *Elstad*, the court was confronted with a situation in which the only evidence that the defendant understood his *Miranda* rights before waiving them was his written affirmative response to the general question "Do you understand these rights?" The court noted that Elstad was a high school graduate in bolstering its conclusion that the state had met

its burden, in that case, of establishing a knowing and voluntary waiver. In the case before us, Hirst testified that he elicited from Schiessler that he understood each right, as it was read to him. Furthermore, Hirst had Schiessler read aloud the portion of the form waiving Schiessler's rights. We do not construe footnote 4 in *Elstad* as a requirement that only high school graduates are competent to waive *Miranda* rights, without some further, specific proof of mental competence.

{¶ 19} Finally, Schiessler cites *State v. Lail*, 2d Dist. Montgomery No. 24118, 2011-Ohio-2312. In that case, a fifteen-year-old defendant, who had been transferred from juvenile court to be tried as an adult for a number of serious felonies, had given a statement. Like Schiessler, the defendant in that case had completed ninth grade. As in the case before us, the detective read the defendant in *Lail* each *Miranda* right before ascertaining that the defendant understood it, and then had the defendant read the waiver of rights section of the form out loud. Unlike in this case, there was evidence in the record in *Lail* that the defendant in that case had "qualified for Special Education services due to a disability determination of cognitive disability," and that his "IQ score 'placed him in the range of what would be considered mild mental retardation.' " *Id.* ¶ 6. There was evidence in the record in that case that the defendant, Lail, "was functioning many grade levels below what would be expected of other students his same age," and that "the personality tests described [Lail] as having deficient social skills and coping skills." *Id.*

{¶ 20} Against the backdrop of evidence in the record that the defendant in *Lail* might have "mild mental retardation," we were obviously concerned about whether the defendant in that case was capable of understanding his *Miranda* rights, so that he could

knowingly and voluntarily have waived them. We considered additional evidence in the record suggesting that, in spite of that defendant's mental deficiencies, he was nevertheless capable of understanding and waiving his *Miranda* rights, found that the trial court's conclusion that his waiver was knowing and voluntary was supported by the evidence, and affirmed his conviction. *Id.* ¶ 23.

**{¶ 21}** In the case before us, by contrast, there is no evidence in the record to suggest that Schiessler had mental deficiencies. The evidence in this record supports the trial court's conclusion that Schiessler knowingly and voluntarily waived his *Miranda* rights. Schiessler's First Assignment of Error is overruled.

### IV. There Is Nothing in the Record to Establish that There Was Evidence that Trial Counsel Could Have Offered, But Did Not Offer, As Proof that Schiessler Had Mental Deficiencies

**{¶ 22}** Schiessler's Second Assignment of Error is as follows:

APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED BECAUSE HIS COUNSEL DID NOT PRESENT EVIDENCE OF HIS LACK OF COMPETENCE TO WAIVE HIS CONSTITUTIONAL RIGHTS.

**{¶ 23}** In making a claim of ineffective assistance of trial counsel, a defendant bears the burden of establishing, from the record, that his trial counsel was ineffective, and that his trial counsel's ineffectiveness prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶ 24}** Schiessler contends in his brief that he "had mental deficiencies and perhaps mental illness. Nevertheless, his counsel did not present any evidence on these issues so that the trial court would know that he lacked competence to waive his constitutional rights." But there is nothing in the record to establish, or even to suggest, that Schiessler had mental deficiencies or mental illness.

**{¶ 25}** If there were such evidence, then we would agree that Schiessler's trial counsel should have offered it at the suppression hearing, so that the trial court could have performed the sort of analysis that we performed in *State v. Lail, supra*. But we cannot find Schiessler's trial counsel to have been ineffective for having failed to offer evidence of Schiessler's mental deficiencies or illness without some showing, in this record, that evidence of that kind existed. If such evidence exists, it could be the basis for a petition for post-conviction relief, where evidence outside the record of the direct appeal is permitted.

**{¶ 26}** Schiessler's Second Assignment of Error is overruled.

## V.  Conclusion

**{¶ 27}** Both of Schiessler's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T French
A. Mark Segreti, Jr.
Mary L. Wiseman