[Cite as *State v. Temple*, 2013-Ohio-3843.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

ALLEN R. TEMPLE

     Defendant-Appellant


Appellate Case No.   2012-CA-65

Trial Court Case No.  2011-CR-260

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of September, 2013.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, P.O. Box 1608, Springfield , Ohio 45501
     Attorney for Plaintiff-Appellee

ALLEN R. TEMPLE, Inmate No. 611415, Madison Correctional, P.O. Box 740, MaCI, London, Ohio 43140
     Defendant-Appellant-*pro se*

MICHAEL C. THOMPSON, Atty. Reg. No. 0041420, 5 North Williams Street, Wright-Dunbar Business, Dayton, Ohio 45402
     Filed *Anders* Brief

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    This is an *Anders* appeal in which Defendant-Appellant, Allen R. Temple, appeals from his prison sentence following a guilty plea to three counts of Gross Sexual Imposition and one count of Unlawful Sexual Conduct with a Minor.    Temple's *Anders* brief asserts one potential assignment of error - that the prison sentence might have violated Temple's Eighth Amendment right against cruel and unusual punishment. Temple also filed a pro se brief and a reply brief contesting his prison sentence on grounds that: (1) the trial court failed to consider certain mitigating factors during sentencing; (2) his trial counsel was ineffective in failing to raise the issue of mental illness; (3) he did not knowingly and voluntarily plead guilty as required by Crim.R. 11(C); and (4) Crim.R. 11(C) requires him to have understood the sentence he was issued during sentencing.

{¶ 2}    We conclude that the Eighth Amendment argument in Temple's *Anders* brief lacks merit and is wholly frivolous, because Temple's prison sentence is within the range of penalties authorized by R.C. 2929.14(A)(3)(a).    We give substantial deference to the legislature's range of penalties, and as a general rule, a sentence that is within the authorized range does not amount to cruel and unusual punishment.

{¶ 3}    We further conclude that the four arguments in Temple's pro se and reply briefs lack merit and are wholly frivolous.   The trial court did not err in failing to consider the mitigating sentencing factors argued by Temple, because the factors are either not supported by the record, or do not lessen the severity of Temple's conduct.   Also, Temple's trial counsel was not ineffective for failing to raise the issue of mental illness, because there is no evidence of mental illness on the record.   Additionally, the record indicates that the trial court complied with

the mandates of Crim.R. 11(C) at the plea hearing, and that Temple knowingly and voluntarily pled guilty. Furthermore, whether Temple understood the sentence issued at his sentencing hearing is irrelevant under Crim.R. 11(C), because the rule relates to a defendant's understanding at the plea hearing. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} Allen R. Temple was indicted on three counts of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), and three counts of Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04(A). The charges arose from allegations that Temple engaged in sexual activity with a minor on hundreds of occasions between November 2008 and March 2011.

{¶ 5} The sexual abuse began when the minor, (J.B.), was 12 years old and Temple was 49. Temple lived just a few houses apart from J.B., and became friends with J.B.'s family. He earned the family's trust and began acting as J.B's mentor. Temple would take J.B. on trips and spend a lot of time with him. The sexual abuse began when J.B. asked Temple for some money. Temple told authorities that the child said he would do anything for the money requested. In exchange for money, Temple took off J.B.'s pants, placed his genitals between the child's legs, and moved back and forth until Temple ejaculated on the child. This arrangement lasted for two and one-half years. During this time, Temple groomed J.B. and sexually abused him on hundreds of occasions. Temple facilitated the sexual activity by giving J.B. money or purchasing things for him. The sexual activity would include Temple masturbating on the child, touching the child's genitals, and having the child perform oral sex on him. Temple encouraged J.B. to lie to his parents about their sexual activities.

**{¶ 6}** In addition to the sexual abuse, Temple gave J.B. alcohol and inflicted bruises and welts on the child's body. According to J.B., Temple shoved him a lot and threw things at him, including a knife. J.B. also indicated that Temple had threatened to kill J.B.'s family.

**{¶ 7}** In June 2011, Temple pled guilty to three counts of Gross Sexual Imposition and one count of Unlawful Sexual Conduct with a Minor, all of which are third-degree felonies. The two remaining counts of Unlawful Sexual Conduct with a Minor were dismissed pursuant to a plea agreement.

**{¶ 8}** Prior to sentencing, the trial court considered J.B.'s age, the nature and duration of the abuse, and the negative effects the abuse had on J.B. For the past three years, J.B. had been receiving psychological treatment from Oesterlen Services for Youth. J.B.'s counselor indicated that J.B suffered from nightmares for a period of time, and that he had become increasingly angry about his abuse. It is reported that J.B.'s relationship with Temple negatively affected the relationship with his siblings. Additionally, J.B.'s father was arrested and charged with burglarizing and committing arson on Temple's home after Temple's arrest.

**{¶ 9}** Also prior to sentencing, the trial court reviewed a presentence investigation report, which indicates that Temple has a prior criminal record. Temple has served time in prison for assault, disorderly conduct, domestic violence, and having weapons while intoxicated.

**{¶ 10}** At the sentencing hearing, the trial court issued Temple the maximum prison sentence of five years for each of his four offenses, and found Temple to be a Tier II Sex Offender. The sentences were ordered to run consecutively; therefore, Temple was sentenced to a total of 20 years in prison.

**{¶ 11}** In September 2012, Temple obtained appointed appellate counsel and appealed

his prison sentence. Temple's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.2d 493 (1967), which asserted one possible assignment of error - that the prison sentence violated Temple's Eighth Amendment right against cruel and unusual punishment.

{¶ 12} Temple subsequently filed a pro se brief and a reply brief contesting his prison sentence on grounds that: (1) the trial court failed to consider certain mitigating factors during sentencing; (2) his trial counsel was ineffective in failing to raise the issue of mental illness; (3) he did not knowingly and voluntarily plead guilty as required by Crim.R. 11(C); and (4) Crim.R. 11(C) requires him to have understood the sentence he was issued during sentencing.

## II. Standard of Review

{¶ 13} In *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, we noted the following regarding the standard of review for *Anders* cases:

> We are charged by *Anders* to determine whether any issues involving potentially reversible error that are raised by appellate counsel or by a defendant in his pro se brief are "wholly frivolous." * * * If we find that any issue presented or which an independent analysis reveals is not wholly frivolous, we must appoint different appellate counsel to represent the defendant.
>
> *Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal. An

issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal. (Citations omitted.) *Id.* at ¶ 7-8.

**{¶ 14}** Accordingly, we must determine whether the arguments set forth in Temple's *Anders* and pro se briefs lack arguable merit.

### III. Does Appellant's Prison Sentence Violate His Eighth Amendment Right Against Cruel and Unusual Punishment?

**{¶ 15}** The sole assignment of error set forth in Temple's *Anders* brief is as follows:

The Maximum Sentence the Trial Court Imposed on Each Count and the Imposition of Consecutive Sentences violated the Appellant's Eight [sic] Amendment Right Against Cruel and Unusual Punishment.

**{¶ 16}** The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *State v. Keller*, 2d Dist. Montgomery No. 18411, 2001 WL 585725 (June 1, 2001), we noted that:

Eighth Amendment violations are rare, and in order for a court to find one "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 371, quoting *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 70. A tripartite analysis is used by reviewing courts to assess whether the penalty imposed is disproportionate to the offense committed:

"First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions."

*Weitbrecht*, *supra*, at 371, quoting *Solem v. Helm* (1983), 463 U.S. 277, 290-291.

A reviewing court need not reach the second and third prongs of the tripartite test except in the rare case where a threshold comparison of the crime committed and the sentence imposed lead to an inference that the two are grossly disproportionate. *Weitbrecht*, *supra*, at fn. 4, citing Justice Kennedy's concurrence in *Harmelin v. Michigan* (1991), 501 U.S. 957, 1005. *Keller,* 2d Dist. Montgomery No. 18411, 2001 WL 585725 at *2-3.

{¶ 17}  The "proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 20.

{¶ 18}  Furthermore, "we are bound to give substantial deference to the General

Assembly, which has established a specific range of punishment for every offense and authorized consecutive sentences for multiple offenses." (Citation omitted.) *Id*. at ¶ 24. Therefore, " 'as a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.' " *Id*. at ¶ 21, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). (Other citations omitted.)

{¶ 19} In this case, Temple's prison sentence falls squarely within the terms of the statute governing prison terms, R.C. 2929.14. Temple was convicted of four third-degree felony offenses for violating R.C. 2907.04 and 2907.05. Under R.C. 2929.14(A)(3)(a), the maximum allowable sentence for each of Temple's offenses is five years. Temple was sentenced to five years for each offense; therefore his individual sentences are within the statutory range authorized by the legislature.

{¶ 20} The issuance of consecutive sentences is also permissible under R.C. 2929.14. Section(C)(4) of this statute permits a trial court to impose consecutive sentences if it finds: "(1) that consecutive sentencing is necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) " that one of the following apply:

"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or

more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 83, 86, quoting R.C. 2929.14(C)(4).

{¶ 21} "The trial court is not required to give reasons explaining these findings, nor is the court required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences." *Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 86, citing *State v. Farnsworth*, 10th Dist. Franklin No. 12 CO 10, 2013-Ohio-1275, ¶ 8. (Other citations omitted.) "Nevertheless, the record must reflect that the court made the findings required by the statute." *Id.*

{¶ 22} In this case, the trial court stated the following before imposing consecutive sentences:

The Court has reviewed the presentence investigation report. We're dealing with a victim who was 12 years-old at the beginning of this first offense indicted in this case. He was 14 years-old at the time of the last event. There are four convictions here, but we're talking about a series of events that occurred almost two and-a-half years, in total, where this child was abused. I do find it disturbing, the Defendant's explanations of the events getting started, were the

willingness of the child to do these things for money. I'm not sure why you would take a 12 year-old's statement and say, this is okay. * * *

The child is in therapy, has been undergoing therapy for quite some time. One report I have from the child's mother is that the nightmares have now seized [sic], but he's having some other problems. And the report would indicate that he's going to have some problems for some time.

The legal statute is to punish the offender and protect the community. The Court finds that as far as the particular types of offenses, considering the length of time in which they were ongoing, it's hard to find any other more serious nature.

The report has indicated – I read the report, and with the report was provided a recorded phone conversation, and I did listen to the phone conversation. The only remorse I've been able to be sure of, at this point, is the remorse of being caught. Criminal Disposition Hearing Trans. (July 13, 2011), p. 8, ln. 25; p. 9, ln. 1-25; p. 10, ln. 1-3.

{¶ 23} The record indicates that the trial court made the first finding required by R.C. 2929.14(C)(4) when the court referred to the need to punish the offender and to protect the community from future crime. Additionally, the trial court noted that Temple showed no remorse for abusing J.B. "[A]n offender 'is likely to commit future crimes' if '[t]he offender shows no genuine remorse for the offense.' " *State v. Newcomb*, 10th Dist. Franklin No. 04AP-1223, 2005-Ohio-4570, ¶ 28, quoting R.C. 2929.12(D)(5). Accordingly, Temple's lack of remorse indicates a need to protect the community from future crimes.

{¶ 24}   The second required finding is referred to when the trial court discussed the seriousness of the offender's conduct, and noted that Temple's offenses were the most severe, given their nature and duration.

{¶ 25}   The third finding under section (b) of the statute is satisfied, because the trial court recognized that Temple's four convictions were based on a series of events that occurred over a two and one-half year period. This indicates that Temple's offenses were not based on one course of conduct, but that each offense was based on numerous courses of conduct that occurred over a long period of time.   The trial court also recognized the negative effect the abuse had on J.B., the long duration of the abuse, and the disturbing way in which the abuse was inflicted. This indicates that the court considered the degree of harm that was caused by Temple's offenses, and that the court found it sufficient to warrant consecutive sentences.

{¶ 26}   For the foregoing reasons, the record reflects that the trial court made the requisite findings under R.C. 2929.14(C)(4) before imposing consecutive sentences.

{¶ 27}   Because Temple's 20-year prison sentence falls within the relevant terms of R.C. 2929.14, and because we give substantial deference to the penalties authorized by that statute, we do not find that his prison sentence amounts to cruel and unusual punishment.   Therefore, the sole assignment of error set forth in Temple's *Anders* brief lacks merit and is wholly frivolous.


### IV.   Did the Trial Court Fail to Consider Mitigating

### Factors During Sentencing?

{¶ 28}   The First Assignment of Error in Temple's pro se brief is as follows:

Mitigating Factors Were Not Considered by the Trial Court As Required

by Law and Due Process.

{¶ 29} Under this assignment of error, Temple contends that his prison sentence should be modified, because the trial court failed to consider mitigating sentencing factors concerning his alleged mental illness and the "vigilante crimes" committed against him by the victim's father. As a sub-argument, Temple also claims that his trial counsel was ineffective in failing to raise the issue of mental illness before the court. We will first address Temple's ineffective assistance of counsel claim, and then review whether the trial court should have considered Temple's proposed mitigating sentencing factors.

A. Ineffective Assistance of Counsel

{¶ 30} "To prove an allegation of ineffective assistance of counsel, a petitioner must satisfy a two-prong test: (1) counsel's performance fell below an objective standard of reasonable representation and (2) resulting prejudice." *State v. Barksdale,* 2d Dist. Montgomery No. 25320, 2013-Ohio-2926, ¶ 28, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (Other citation omitted.) "[W]e cannot find * * * trial counsel to have been ineffective for having failed to offer evidence of * * * mental deficiencies or illness without some showing, in [the] record, that evidence of that kind existed." *State v. Schiessler*, 2d Dist. Montgomery No. 24771, 2012-Ohio-4085, ¶ 25.

{¶ 31} In this case, Temple contends that the performance of his trial counsel was deficient, because counsel failed to inform the court that he suffered from a mental illness. Temple's PSI report does not indicate that he suffers from mental illness or that he has a history of mental illness. Additionally, Temple was given the opportunity to address the trial court at

his sentencing hearing, and he did not mention being mentally ill. Furthermore, his behavior at court and his responses to the court's questions at the plea and sentencing hearings were appropriate and did not indicate that he was mentally ill. There is absolutely nothing in the record establishing or even suggesting that Temple suffers from a mental illness. Because there is no evidence of mental illness on the record, Temple's trial counsel was not ineffective in failing to raise the issue before the trial court.

## B. Mitigating Factors

**{¶ 32}** R.C. 2929.12(A) sets forth the factors a trial court is required to consider during felony sentencing, and it states:

> [T]he court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, and the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

**{¶ 33}** Section (C)(4) of R.C. 2929.12 provides that courts shall consider whether "[t]here are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." The court considers this factor to determine whether "the offender's conduct is less serious than conduct normally constituting the offense." R.C. 2929.12(C). Mental illness qualifies as a mitigating factor under R.C. 2929.12(C)(4). *State v.*

*Spencer*, 2d Dist. Montgomery No. 17706, 1999 WL 1043924, * 4 (Nov. 19, 1999).

{¶ 34} In this case, Temple argues that the trial court failed to consider mental illness as a mitigating factor during sentencing. Under this argument, he also claims that his mental illness was obvious, and that the court should have held a competency hearing. "The court has a duty to raise the issue of a defendant's competency *sua sponte* based upon the following factors: (1) doubts as to defendant's competency expressed by his counsel; (2) evidence of irrational behavior; (3) defendant's demeanor; and (4) prior medical opinions." (Citation omitted.) *State v. Fischer*, 2d Dist. Montgomery No. CA 12313, 1991 WL 97776, * 1 (June 4, 1991). As we previously discussed, the issue of mental illness was never raised before the trial court, and there is nothing in the record indicating that Temple was mentally ill. Accordingly, the trial court was not required to hold a competency hearing, nor did it err in failing to consider mental illness as a mitigating factor during sentencing.

{¶ 35} Temple also argues that the trial court was required to consider the crimes committed against him by the victim's father as a mitigating factor. We fail to see how the criminal acts of J.B.'s father mitigates Temple's repeated acts of sexual abuse on J.B. The fact that the father committed crimes against Temple's property does not render Temple's offenses any less serious. Furthermore, the father's criminal actions took place after Temple was incarcerated and are, therefore, irrelevant. Accordingly, the father's crimes are not mitigating factors to be considered under R.C. 2929.12(C)(4).

{¶ 36} For the foregoing reasons, the First Assignment of Error in Temple's pro se brief lacks merit and is wholly frivolous.

## V. Did the Proceedings Comply With Crim.R. 11(C)?

**{¶ 37}** The Second Assignment of Error in Temple's pro se brief is as follows:

Appellant Did Not Understand the Proceedings as Required by Ohio Criminal Rule 11(C), Crim. R. 11(C) [*sic*], Due to Ineffective Assistance of Counsel and Ambiguity in the Oral Pronouncement of Sentence.

**{¶ 38}** Under this assignment of error, Temple argues that he did not understand the sentence he was issued at the sentencing hearing, because of mental illness, ineffective assistance of counsel, and the trial court's ambiguous oral pronouncement of his sentence. Temple contends that his understanding of the sentence is required under Crim.R. 11(C). He also argues that he did not knowingly and voluntarily plead guilty as required under Crim.R. 11(C). We will first address whether Temple knowingly and voluntarily pled guilty, and then review the issue concerning Temple's understanding of his sentence.

### A. Validity of Guilty Plea

**{¶ 39}** Temple argues that he did not knowingly and voluntarily plead guilty as required under Crim.R. 11(C). In order to conclude that a plea has been knowingly, intelligently, and voluntarily entered, an appellate court "must determine if the trial court substantially complied with Crim.R. 11 in accepting the plea. Substantial compliance occurs when 'the defendant subjectively understands the implications of his plea and the rights he is waiving.' " *State v. King*, 2d Dist. Montgomery No. 23325, 2010-Ohio-2839*, ¶* 12, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). (Other citations omitted.) Under Crim.R.11(C)(2), the trial court is charged with doing the following before accepting a guilty plea:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 40}   In this case, the record establishes that the plea colloquy between the trial court and Temple substantially complied with the requirements set forth in Crim.R. 11(C)(2). Accordingly, the record indicates that Temple knowingly and voluntarily pled guilty.

B.   Understanding of Sentence

{¶ 41}   Temple argues that Crim.R. 11(C) requires him to have understood his sentence at the sentencing hearing.  His reliance on Crim.R. 11(C) is misplaced.   The rule concerns a defendant's rights upon entering a plea, and sets forth the requirements a trial court must follow

to ensure that a defendant knowingly and voluntarily pleads guilty. Crim.R. 11(C) is not implicated during sentencing, because at that point, a plea has already been entered. Therefore, Temple's lack of understanding at the sentencing hearing is irrelevant under Crim.R. 11(C).

{¶ 42} Furthermore, Temple's reasons for not understanding his sentence are without merit. He claims to have lacked understanding due to mental illness, ineffective assistance of counsel, and the trial court's ambiguous oral pronouncement of his sentence. There is no record of Temple having a mental illness, and Temple fails to state how counsel's performance fell below an objective standard of reasonableness.

{¶ 43} Temple contends that the trial court's oral pronouncement of his sentence was ambiguous because the court did not directly state that he was sentenced to a total of 20 years in prison. He argues that the court's statements led him to believe that he was sentenced to only five years.

{¶ 44} " '[A] defendant [is] entitled to have ambiguous language construed in his favor, *if the court's oral pronouncement of the sentence differed from the journal entry*.' " (Emphasis added.) *State v. Marbury,* 10th Dist. Franklin No. 03AP-233, 2004-Ohio-3373, ¶ 67, quoting *State v. Nye*, 10th Dist. Franklin No. 95APA11-1490, 1996 WL 303675, * 2 (June 4, 1996); *Gaddis v. United States*, 280 F.2d 334, 336 (6th Cir.1960). (Other citation omitted.) If there are no inconsistencies between the written journal entry and what the judge stated at sentencing, the requisite ambiguity does not exist. *See, e.g., State v. Sheffey*, 8th Dist. Cuyahoga No. 98944, 2013-Ohio-2463, ¶ 34-37.

{¶ 45} In this case, the trial court stated the following at Temple's sentencing hearing:

> It is the order of the Court as to counts one, two, three and four, each being

a felony of the third degree, the Defendant be sentenced to five years to the state penitentiary at an institution to be determined by the Department of Rehabilitation Corrections.

* * *

[T]he five year prison sentence is to be served consecutive to each other * * *. Criminal Disposition Hearing Trans. (July 11, 2013), p. 10, ln. 4-8, 25; p. 11, ln. 1.

{¶ 46} The trial court later said, "Mr. Temple, you have been given the maximum sentence on this offense." *Id.* at p. 13, ln. 25; p. 14, ln. 1. Temple was previously informed at the plea hearing that the maximum possible sentence was 20 years. Plea Hearing Trans. (June 27, 2011), p. 7, ln. 13-17.

{¶ 47} The judgment entry of conviction, filed on July 13, 2011, clearly indicates that Temple was sentenced to 20 years. The judgment entry is consistent with the trial court's pronouncement at the sentencing hearing, because at sentencing, the trial court ordered four five-year consecutive sentences. Additionally, the trial court indicated that Temple received the maximum possible sentence, which was established as 20 years at the plea hearing. Because there are no inconsistencies between the trial court's oral pronouncement and the written judgment entry, the ambiguity required for Temple to prevail on his argument does not exist.

{¶ 48} For the foregoing reasons, the Second Assignment of Error in Temple's pro se brief lacks merit and is wholly frivolous.

**VI. Conclusion**

**{¶ 49}** Pursuant to our responsibilities under *Anders*, we have conducted an independent review of the entire record and, having done so, we find that there are no meritorious issues to present on appeal. Accordingly, we affirm the trial court's decision.

. . . . . . . . . . . . .

FAIN, P.J., and HALL, J., concur.

Copies mailed to:

Lisa M. Fannin
Allen R. Temple
Michael C. Thompson
Hon. Richard J. O'Neill