OPINION
{¶ 1} Appellant, Brian E. Ondic, appeals the judgment entered by the Trumbull County Court of Common Pleas. Ondic was sentenced to a total prison term of four years for his convictions for domestic violence, assault, and abduction.
 {¶ 2} During the relevant times leading to the incident in question, Ondic had a relationship with Vanessa Stout ("Vanessa"). They have two children together. However, on the night in question, only one of the children, Cameron, was born, and Vanessa was nine-months pregnant with the second child.
 {¶ 3} In June 2002, a custody and protection order was issued in Mercer County, Pennsylvania. The order established joint custody of Cameron. Vanessa had primary custody of Cameron, while Ondic had partial custody. Ondic had visitation rights with Cameron every other weekend and alternating holidays. In addition to the custody matters, the order prohibited Ondic from having contact with Vanessa beyond what was necessary to facilitate visitation with Cameron.
 {¶ 4} Although the order prohibited Ondic from having contact with Vanessa, the two continued to see each other. In the months prior to this incident, they lived together in Florida. Thereafter, they moved to Ohio and lived with Ondic's mother. A few days prior to the incident in question, Vanessa moved out of the residence.
 {¶ 5} On Tuesday, April 22, 2003, Ondic was attempting to locate Vanessa. He called Luana Yount ("Luana"), a friend of Vanessa's. Luana shared an apartment with her roommate, Desiree Belliboui ("Desiree"). Luana informed Ondic that Vanessa was not in the apartment; however, Ondic heard Cameron in background, so he assumed that Vanessa was at the apartment. At the time, Luana, Vanessa, Cameron, Desiree, and Richard Coleman ("Richard"), Luana's friend, were in the apartment.
 {¶ 6} Ondic went to the apartment. Luana and Desiree told him he was not welcome in the apartment. A few minutes later, they opened to the door to allow Richard to leave. At that time, Ondic forced his way into the apartment. Luana attempted to restrain Ondic. In the struggle, Ondic hit her in the head. Then, in a further attempt to free himself, Ondic threw his elbow at Luana. The elbow missed Luana and hit the wall, leaving a hole in the wall.
 {¶ 7} Ondic was able to free himself from Luana. He approached Vanessa and punched her in the face five or six times. Vanessa suffered two black eyes, a concussion, and bumps on her head. In addition, she went into early labor, but it was stopped. In response to the attack, she relinquished control of Cameron to Ondic. Ondic attempted to leave with Cameron. However, Luana, Desiree, and Devon Pierce ("Devon"), Luana's neighbor, attempted to restrain him in the hallway. Ondic was able to leave the apartment building when the group let go of him after becoming concerned about the safety of Cameron.
 {¶ 8} When Ondic initially entered the apartment, Desiree called 9-1-1. Officer John Bizup of the Brookfield Township Police Department responded to the call. Ondic had left with Cameron by the time the officer arrived. Officer Bizup was taking statements from the individuals at the apartment. During that time, Ondic placed a call to the apartment. Vanessa answered the call and handed the phone to Officer Bizup. Officer Bizup asked Ondic to return Cameron, and Ondic replied "fuck you." This scenario was repeated in a second phone call from Ondic. Finally, in a third phone call, Officer Bizup convinced Ondic to return to the apartment with Cameron.
 {¶ 9} Ondic returned to the apartment. Cameron, unharmed, was returned to Vanessa. Ondic was arrested. As a result of these events, Ondic was charged with aggravated burglary, domestic violence, assault, and abduction. He pled not guilty to these offenses.
 {¶ 10} A jury trial was held. Officer Bizup, Vanessa, Desiree, Luana, and Devon testified for the state. Ondic testified in his own defense. After the defense rested, Ondic moved for acquittal pursuant to Crim.R. 29. This motion was overruled by the trial court. The jury returned guilty verdicts on the abduction, assault, and domestic violence charges. The jury found Ondic not guilty of the aggravated burglary charge.
 {¶ 11} Ondic was sentenced to six-month terms for the assault and domestic violence convictions. In addition, he was sentenced to a four-year term for the abduction conviction. These terms were ordered to be served concurrently.
 {¶ 12} Ondic raises the following assignments of error on appeal:
 {¶ 13} "[1.] The finding of the trial court that appellant abducted his son is not supported by sufficient evidence.
 {¶ 14} "[2.] Appellant's conviction is against the manifest weight of the evidence."
 {¶ 15} Ondic does not challenge his convictions for assault and domestic violence. However, as an aside, we note that several witnesses, including Ondic and Stout, testified that Ondic punched Stout in the face. Thus, there was sufficient evidence to support these convictions and they are not against the manifest weight of the evidence.
 {¶ 16} In his first assignment of error, Ondic asserts there was insufficient evidence to sustain his abduction conviction. A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 17} Abduction is codified in R.C. 2905.05, which provides:
 {¶ 18} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 19} "(1) By force or threat, knowingly remove another from the place where the other person is found[.]"
 {¶ 20} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 21} Ondic challenges the element of abduction that he took Cameron "without privilege." While Vanessa testified that she told Ondic to "take [Cameron] and leave," this comment was made immediately after Ondic had punched her in the face five to six times. As such, there was sufficient evidence for the jury to find that Vanessa's statement was made under duress and she did not intend to give Ondic permission to take Cameron. Thereafter, Ondic left the apartment with Cameron. Therefore, the state provided sufficient evidence on the other elements of abduction. We will focus on Ondic's primary contention, that, as Cameron's father, he had a privilege to take him and could not be convicted of abduction.
 {¶ 22} "`Privilege' is defined for the purpose of the Revised Code as `an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity.'" State v. Kole (2001), 92 Ohio St.3d 303,305, quoting R.C. 2901.01(A)(12).
 {¶ 23} At trial, the Pennsylvania custody order was admitted as a state's exhibit. Vanessa testified that the order was between Ondic and herself. In this case, there was a binding court order, from Pennsylvania, establishing Vanessa as the primary custodian of Cameron. In addition, the day in question, a Tuesday, was not a day designated for Ondic to have visitation.
 {¶ 24} Ondic cites State v. Hill in support of his argument that he could not be convicted of abduction because he is Cameron's father. Statev. Hill (1996), 75 Ohio St.3d 195. In Hill, the Supreme Court of Ohio analyzed Ohio's kidnapping statute and noted that it did not contain the language "without privilege to do so," which is included in other statutes, including R.C. 2905.05. Id. at 206. In addition, the court "recognized that `in the absence of an agreement or binding court order, parents have equal rights to custody.'" Id., quoting Pasqualone v.Pasqualone (1980), 63 Ohio St.2d 96, 100; however, in a situation where there is a binding custody order, it determines the rights of the parents.
 {¶ 25} The state cites State v. Ortiz in support of its argument that a parent may be convicted of abduction when he takes the children in violation of a custody order. State v. Ortiz (July 2, 1992), 3d Dist. No. 13-91-17, 1992 Ohio App. LEXIS 3437. In State v. Ortiz, the defendant was the children's father and was not married to their mother. A custody order in favor of their mother was in place. While visiting the children, the defendant drove their mother to a bank to run errands. When she was in the bank, he left with the children and took them to Florida. Id. at *2. Due to the existence of the court order, the Third Appellate District held that the defendant did not have an equal right to custody of the children.
 {¶ 26} In this matter, the Pennsylvania order diminished Ondic's custody rights to Cameron. Thus, when he took Cameron in violation of the order, he did not have a "privilege" to do so.
 {¶ 27} Ondic argues that the custody order should not be dispositive of this matter, because he and Vanessa did not follow the visitation times set forth in the order. Even if we found this argument persuasive, Ondic's conviction would still stand.
 {¶ 28} The Fourth Appellate District has addressed a similar situation. State v. Matthews (Dec. 5, 1996), 4th Dist. No. 13-96-23, 1996 Ohio App. LEXIS 5682. In Matthews, the defendant was the child's stepfather. He argued that the child's mother had regularly given him permission to take the child and he often did so without her express permission. Id. at *5. The court affirmed his abduction conviction and held "[w]hile [the mother] may have granted Appellant permission to take her son places in the past, [even without asking permission before hand, on the day in question] all express or implied privileges given to Appellant were expressly revoked." Id. The court reasoned that the defendant took the child against the express wishes of an individual with superior custody rights, the child's mother. Id. The same situation occurred in the case sub judice. As the parent with "primary custody," Vanessa had superior custody rights to Cameron. Ondic took Cameron from Vanessa's arms after punching her in the face several times. As such, any previous privileges he had were revoked, and Ondic did not have permission to take Cameron from the apartment.
 {¶ 29} The facts of this case demonstrate that Ondic physically removed Cameron from his mother's arms, over her objections. In fact, he punched Vanessa in order for her to relinquish control of the child. The state provided sufficient evidence regarding the existence of the protection order. The order gave Vanessa superior custody rights to those of Ondic. Accordingly, Ondic's actions of taking Cameron over Vanessa's objections, could be deemed "without privilege," regardless of his status as Cameron's father.
 {¶ 30} When viewed in a light most favorable to the prosecution, the state provided evidence from which a rational trier of fact could have found all the elements of abduction, including the "without privilege" element, proven beyond a reasonable doubt. Thus, the state provided sufficient evidence on this charge, and the trial court did not err by overruling Ondic's Crim.R. 29 motion for acquittal.
 {¶ 31} Ondic's first assignment of error is without merit.
 {¶ 32} In his second assignment of error, Ondic claims his abduction conviction is against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 33} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 34} In his second assignment of error, Ondic again challenges his conviction by arguing that he had a privilege to take Cameron because he was his father. Ondic testified in his own defense. Regarding the privilege issue, his testimony did not substantially differ from the state's witnesses, including Vanessa's. He admitted striking Vanessa and taking Cameron out of the apartment. The state presented substantial evidence regarding the custody issue, including a copy of the Pennsylvania custody order, which was identified by Vanessa. The order designated Vanessa as the parent with primary custody of Cameron. The defense did not present any significantly conflicting evidence on this point, thus, we cannot say the jury lost its way or created a manifest miscarriage of justice when it convicted Ondic of abduction.
 {¶ 35} The jury's verdict was not against the manifest weight of the evidence.
 {¶ 36} Ondic's second assignment of error is without merit.
 {¶ 37} The judgment of the trial court is affirmed.
Ford, P.J., Grendell, J., concur.